would you step forward for just a minute and just tell us your names please. I'm Mr. Christopher Herkey for the appellant Brandon Meyers in this case. Assistant State's Attorney Brian Wilberts on behalf of the people of the state of Illinois. And I know you both know this because you've been here before. The microphone only records, it doesn't amplify so keep your voices up nice and loud. You are allowed 20 minutes aside. You do not have to use the whole 20 minutes but I will ask the appellant if you would like to reserve any part of that 20 minutes. About three minutes please. Okay. You may have a seat and you may begin Mr. Herkey. Thank you Your Honor. Your Honor I would like to address three of the four issues I've described in my brief. That being the sufficiency of the evidence, the admission of the improper bullet hole evidence, and the improper closing argument. And of course I will address this court's order about the one act one crime issue. I'm obviously happy to answer any questions about any issues at any time Your Honor. Your Honor on July 1st 2009 Officer Francisco Iza shot my client Brandon Meyers from behind as my client fled from him in an empty lot. Afterwards Officer Iza and his partner claimed that my client fired a single shot at them first. However Your Honor the forensic evidence and the testimony from the police officers in this case show that Iza was in fact the only shooter and that my client never fired a shot. Officer Barra who was driving the police car that carried Officer Iza and his partner he stayed in his car during the chase. And he testified that he heard exactly four gunshots. He testified to this multiple times about five or six times on direct cross and reexamination. I'm sorry redirect examination. He heard four gunshots. He heard them fired in sequence immediately after another and all within the course of about two seconds. And after hearing those gunshots Your Honor he testified that he turned and saw Officer Iza standing over my client. The forensic evidence his testimony is important because the forensic evidence shows that four cartridge casings were found at the scene. All four casings were matched to Officer Iza's gun. Officer Iza's gun was missing exactly four bullets. Zero casings from my client's gun were found at the scene. And that's important Your Honor because if you take it in the police testimony Officer Barra in addition to Officer Iza and DuBose all the gunshots that were fired including my client's shot were all fired within the course of about two seconds from less than ten feet away. So had my client fired a shot his cartridge casing from his gun should have been close to Iza's cartridge casings. And the police underwent a significant forensic effort in this case. They brought a light truck. They brought rakes, extra officers, flashlights. They were doing grid searches. They found every single one of the four shots that Officer Iza fired but not find a single cartridge casing from my client's gun. In addition Your Honor Officer DuBose who was running alongside Officer Iza specifically testified that he did not actually see Iza fire a shot. He said his attention was somewhat focused on a co-defendant who was also running but he testified that he heard two stories both of which also show that Iza fired the only shot. He first testified that he heard a gunshot, turned and looked and my client was already on the ground. The second thing he said is that he heard a gunshot, turned and looked and my client was in the process of turning in their direction. So under either story, whichever one you take, Officer DuBose similarly indicated, his testimony similarly indicates that Officer Iza was the only person who fired a shot in this case. Did he testify that he saw a gun in your client's hand? He did Your Honor. He testified that he saw a gun in my client's left hand. Did they recover a gun? Yes they did Your Honor. Did they test the gun to see whether it had recently been fired? They, I don't know if they did a test on the gun but my client did have gunshot residue on his hand. But if you officers, I'm sorry, if you Your Honors probably remember, there was no recent attempt robbery that my client admitted, which he's not challenging in this appeal, where he fired a gun. He was convicted of that offense in this same case. And that attempt robbery where he fired a gun occurred just minutes before this chase which the officers didn't know about at the time. I also point out that the gunshot residue was on my client's right hand whereas both officers testified that my client fired at them or held a gun in his left hand. Well they found some evidence of gunshot residue on his left hand. I would take issue with that Your Honor. I think that they found two tripartite particles on his left hand. The science says you have to have three particles for there to be a positive gunshot residue finding. And that these particles are not even unique to gunshot residue which is why you have to have three of them in addition to two consistent particles. So the existence of two particles on his left hand is no more consistent with him firing with his left hand than it would be, than zero particles or one particle Your Honor. You have to have three, otherwise it's scientifically meaningless. And regardless, even if he had gunshot residue on his left hand, that's equally explained by the fact that he fired a gun during a previous armed robbery. There's nothing about the facts in this case from which a fact finder could reasonably conclude that the gunshot residue occurred from the shooting in the empty lot versus the shooting that he performed during the armed robbery. So the only real physical, supposed physical evidence in this case that corroborates... The hole in the garage. Yes Your Honor, the hole. Which if you actually look at the photos, and I hope you do Your Honor, it's actually more of a dent than a hole. It doesn't actually go all the way through. But even then, Officer Issa's testimony is the only evidence linking that dent to this case. And he himself admitted he had no idea whether that dent was there before or not. He admitted, quote, he had no way of knowing how that hole got there. The state did not present any testimony from the garage owner indicating that that dent was recently created or it didn't exist before. There was no... There's nothing about Issa's testimony from which a person could reasonably conclude that it was made recently versus a week or a month later. There's no basis of knowledge that he provided indicating how he can tell the recency of dents in a garage. And I'll also point out, Your Honors, that I asked this court to take a judicial notice of some city of Chicago data. This garage was in East Garfield Park. There's a lot of gun crime in that area. But even if you disregard that, Your Honors, the state still has to connect that to this case. So even if it has some marginal relevance, there's very, very little collaboration for Issa's testimony, especially in light of all the other forensic and police evidence. And finally, Your Honors, I'd like to point out that there's a surveillance video in this case which documents the entire chase up until seconds before the shooting occurred. The police officers who testified in this case agreed that the surveillance video shows that my client did not have a gun in his hand during the entire time he's on the video, and he shot just seconds after he exits the video. So taking that evidence in conjunction with Bottle's testimony to hearing four shots, forensic evidence indicating that all four shots were fired by Issa, DeVos' testimony indicating that Issa was the only shooter, the absence of forensic or physical evidence actually corroborating Issa's testimony in this case, respectfully request that you find that the state failed to prove beyond a reasonable doubt that my client actually fired a shot in the direction of the officers. I'm going to ask you to address the one act, one crime argument so we don't run out of time. Absolutely, Your Honor. So Your Honors asked us, both parties, to explain whether you can have two convictions for a single act. And the answer is that it depends on the crime that's charged. But in this case, because the elements of the crime only require discharging a direction, I'm sorry, discharging a firearm in the direction of a person, here there were two people, and so in this particular case, for this offense, you can have two convictions for a single act. You can or you cannot? Can. You can see that you can. But of course, Your Honors, we would ask you to find that the evidence was not proved in this case. Right. Okay. Apart from the sufficiency issue, unless Your Honors have any other questions about the sufficiency issue. Go ahead. But Officer Issa did testify, and one person's testimony is enough, isn't it? One person's testimony is enough if it's positive and credible, according to the Illinois Supreme Court. In this case, I don't think you can draw a reasonable inference that my client actually fired a gun from his testimony based on this mountain of other evidence. Again, primarily the fact that his own officers, his own fellow officers testified to hearing four shots, four casings were found at the scene, all of which were linked to his gun. So in the absence, again, of my client's cartridge casing, where you would expect one to be, how he actually fired a gun. Again, all within two seconds, within ten feet, the police found nothing. Didn't both officers testify that they heard a whizzing sound after the gunshot? Yes, Your Honor. So they said they heard a whizzing sound. You're right, Your Honor. So that's two police officers saying circumstantially that a shot was fired in their direction. First of all, Your Honor, Dubose testified to that. But again, Dubose's own testimony indicates that he heard a gunshot. That first shot he heard, he turned and looked, and my client was already on the ground. First shot he heard, he turned and looked, or my client was in the process of turning toward them. So I think that you have to take that evidence. He did say he heard a whizzing sound. He did say he heard a whizzing sound, Your Honor. You're right. But I think that the balance of the other evidence directly contradicts that testimony. And I'll remind the Court, too, that the officers in this case do have an incentive to explain why my client was shot in this case. And so I think that taking that factor in consideration, along with all the other evidence, again, no forensic evidence shows that my client fired a gun at that lot. And all the forensic evidence shows that Officer Iza was the only shooter. And that's corroborated by the police video showing that my client did not have a gun in his hand during the entire chase, as well as all the other evidence I've described. I don't remember. Did that video show his hands, though? It showed him running. Right, it showed him running. But the officers admitted that when they testified about what the video depicted, they admitted that it did not show that his hands were on a gun. But their testimony was, I think, that he was holding his side, supposedly, the gun. Officer DuBose testified that he, with my client, was messing around with his waist and was reaching toward his waistband. But I'll remind the Court, too, that the third issue in this case, which I wasn't planning on addressing but I'd be happy to, was that the cross-examination on that fact was improperly limited. Apart from the sufficiency issue, Your Honors, if this Court finds the evidence is sufficient, respectfully request that it nonetheless reverse normand for a new trial because the admission of the bullet hole evidence in this case was improper. As this Court is well aware, evidence has to be relevant to be admissible, and for evidence to be relevant, physical evidence particularly to be relevant, it has to be connected to both the case and to the defendant, and it cannot be speculative, excuse me, speculative, remote, or uncertain. And this is the definition of remote or uncertain evidence, Your Honors. This is the definition of speculative evidence because the person who testified about it admitted that he was speculating. The only evidence that this dent in this garage linked to this case is from Officer Iza. Officer Iza specifically testified that he had no way of knowing how the dents got there. And again, as I had described, the police presented no other evidence, even circumstantial evidence, showing that this dent was recently created. They didn't call the garage owner to testify that this dent was new. Officer Iza again admitted that he was speculating. And there was even, and because it's a dent, we know that the bullet should be found in that alley. They specifically testified they did not find a bullet in the alley. So the only thing we really have here is Officer Iza's sort of assertions, but in his opinion, again, the person who shot my client, in his opinion, this dent seemed fresh or that it lacked rust or debris. But again, we have no idea what that even means because there's no foundation in the record. He doesn't testify as to how he can tell by looking at a dent whether it's recently created or not. He doesn't, the state doesn't call any scientific expert or evidence, present any scientific evidence showing that, oh, you can tell by the coloration or something like that, that this dent was recently created or not. And if this court decides to take judicial notice of the scientific documents I cited in my brief, aluminum doesn't really rust or corrode. It's highly resistant to that. Nothing about Iza's testimony makes it any more likely this dent existed, but nothing about his observation that it's fresh makes it any more likely that this dent, you know, was recently created versus created a week, a month, or a year earlier. I think this is going to take you right back to your sufficiency argument, but why was this not harmless error if it was error? Oh, it's not harmless error because, oh, for several reasons. First of all, this was a jury trial, and the police were allowed to testify, two police officers testified about this. Iza was the one who was the proponent of the evidence. They also called a forensic expert who testified about the photos he took of it. Both testified that there was no rust or debris. The state was allowed to elicit from Officer Iza that it, in the state's words, matched the trajectory of the bullet my client supposedly fired. Several photos of this document were submitted to the jury and sent back to the jury room with them. And the most harmful thing in this case, Your Honor, is that the prosecutor specifically argued that this dent, which has no connection or at most a tenuous connection to this case, was proof beyond a reasonable doubt that my client fired this gun. The prosecutor argued specifically that, excuse me, the prosecutor argued that, quote, the bullet hole looked like a fresh bullet hole. Remember the hole in the garage. It wasn't dirty or rusty. There was no debris. It was fresh. And specifically, the damage was, quote, consistent and corroborative of what the police officer saw. So you have evidence that has no connection to this case. The only connection to this case is from the testimony of a person who admits he has no basis for his conclusion. And the state was arguing it affirmatively to a jury that it's physical proof that my client fired a gun in a close case. Therefore, Your Honor, for the reasons I've just described, respectfully request that you find, if this evidence is insufficient beyond, if you find the evidence insufficient, that you reverse your remand for a new trial on this basis. I have just one final issue that I can discuss if that's okay with Your Honor. Your Honor, finally, the improper closing argument. The state made essentially two, I brought up three issues. I want to talk about two of them. Two facts that they manufactured in closing argument to sort of shore up the weaknesses in their case. The first is that the prosecutor told the jury that there's another piece of circumstantial evidence that they should remember, and that's that my client supposedly made an admission to one of the officers that he was left-handed. Didn't the court sustain the objection? They did, Your Honor. And then instruct the jury to disregard it? That's correct, Your Honor. However, because of the prejudicial nature of that comment, especially in light of the fact that the issue of the left hand was litigated and discussed throughout the course of not only the trial, but throughout the course of the closing arguments. So the Illinois Supreme Court has held that whether a jury instruction will cure an error depends on, quote, the nature and extent of the statements and whether they're probative of the defendant's guilt. And the issue of whether my client actually fired with his left hand was an issue that was litigated by both parties. The defense counsel specifically argued that the proof of the gunshot residue on the right hand contradicted the officers and showed that they weren't credible. And the state's argument was that you should believe the officers who testified that he shot with his left hand. The gun residue kit did go back to the jury, right? We don't have it, but it went back to the jury, correct? The gun residue kit? Yes. You know what, Your Honor? I don't recall that even if it did, there wasn't evidence that was actually presented at trial. I don't think the gun residue kit was admitted into evidence, but I could be wrong about that. I honestly don't remember, Your Honor. I thought that the only evidence that was admitted was... There was no testimony. There certainly was no testimony, and it was my understanding from the record that the evidence that the Officer Burke or the Forensic Technician Robert Burke was the only person who testified about the gunshot residue evidence. And bringing me to the gunshot residue evidence, Your Honor, as I described earlier, the State specifically argued that while there was no positive finding of gunshot residue on the left hand, that there were, that the fact that there were two particles on the left hand was consistent with him firing with that left hand. But as I said before, there's a scientific basis for when there is or isn't gunshot residue, and that's the minimum requirement of three, three-part particles, and at least two or more two-part particles, which were described as consistent particles. So the fact that the State was overstating the scientific evidence was extremely prejudicial. The State was perfectly within its rights to argue that just because there was not gunshot residue on the left hand doesn't necessarily mean that he didn't fire with his left hand. They could have made that argument. But instead, they argued the scientific evidence affirmatively, saying that the existence of these particles on the left hand were affirmative proof, prudent evidence that made it consistent with him firing with that left hand. But no objection was made to that. No objection was made, John, but I have two responses to that. First, it was a plain error because the evidence was closely balanced for the reasons I described in the sufficiency argument. And second, the first issue was preserved, and that these errors can add context to that first issue about the improper admission, the improper assertion that my client made to being left-handed. Let me pat you off so that you have some time for rebuttal. Thank you, Your Honor. May it please the Court again, Assistant State's Attorney Brian Malitsky. Your Honor, as it's undisputed, the defendant had a gun the night of this offense. He was just involved in an attempt armed robbery in an aggravated discharge where he fired it, and he concedes that he makes absolutely no challenge to those facts which show that he had a gun the night of this offense. And the jury heard the same reasonable arguments that he presented to this Court today. At trial, they knew that there was no shell casing found. They knew about the grid search and the rakes, and I don't think the defendant mentioned this, but also that metal detectors were used. They saw the bullet hole video. They saw the surveillance video. They heard the gunshot residue expert testify, and it was the province of the jury to resolve these conflicts in the testimony. In this case, they resolved it against the defendant, and at this stage of the proceedings, the inferences and the evidence has to be seen in the light most favorable to the people. And for those reasons, we're asking this Court to affirm defendant's convictions. And this is the testimony that the jury found credible from the police officers, and that's from Officer Ball, who was driving the car. He's the one who first saw the defendant putting the gun in his waistband. It's Officers Iza and DeBose who get out and chase the defendant through the field. Officer Iza, this Court is aware of the facts, Officer Iza is the one who sees the muzzle fire, heard the bullet at a distance of 10 feet. Defendant calls this, and he says that we shouldn't take an inference from this. It's direct evidence of the fact that defendant fired the bullet towards two police officers, which is why two convictions were appropriate in this case. And Officer DeBose heard the bullet. Officer DeBose also found a firearm either between a few or several feet away from defendant, which leads to an inference that defendant had the gun in his hand, not in his waistband at the time that Officer Iza fired four shots in response. Officer Ball did testify that he heard four shots. He later clarified, and I understand the defendant takes issue with this, that there was one followed by three, maybe more bullets. But that's consistent with the testimony that the jury heard from Officers Iza and DeBose. And, again, we do have the bullet hole, which is consistent with the testimony that the jury heard. But the jury, listening to the sayings. Did anybody testify it is a bullet hole, or did they say it is a dent? I believe, I apologize, I thought it was referred to as a bullet hole, but the jury saw the photograph themselves. They could look at it, apply their condescension. No doubt they saw that, but did anybody testify it's a bullet hole? Yeah, I apologize. I'm not recalling the specific testimony from the officer, the evidence technician feels that they described it as a bullet hole or a dent. Whatever they called it, was there any testimony tying it to this incident or this gun? The testimony that the defendant correctly represents is that it was within the trajectory of the direction that the defendant fired the bullet at him. But a rational jury could look at this testimony, could look at the physical evidence as well, and found that in this case, this is a case where the defendant was escaping an armed robbery. He was chased by the police officer, and he fired a bullet in an attempt to make good his escape. And Justice Pierce, you asked about whether there was gunshot residue on the gun itself, and I don't recall that the gun was ever tested. I believe it was only the defendant's hands that were tested. I do want to point out with respect to the reason for that argument, I believe the defendant says that he was shot from behind. My recollection of the testimony is that Officer DeBose was asked if the defendant was shot. He said he heard that it was in the leg. He was asked on cross-examination, was it from behind, and an objection was sustained. I believe the objection was to Pierce, since he said that he heard about where the defendant was shot at that point. So I don't believe that's actually fact and evidence. The defendant effectively presents a reasonable hypothesis of his innocence, which isn't the standard in this case. But if there are no further questions on reasonable doubt, I would like to move on to the other two issues that the defendant raises here. With respect to the bullet hole, first, the defendant argues in his brief that this issue has to be reviewed denoted because the facts aren't in dispute. However, the judge in this case had to assess the impact of the photograph and testimony about it. The jury had to weigh issues of credibility and relevance and had to apply its discretion in admitting this evidence. And so this court should have reviewed this issue for an abuse of that discretion. Now, the jury, again, saw this photo. It could apply its common sense, make whatever inferences that it wanted to. And to the extent that it didn't have as much bearing on this case as the defendant, I would ask this court to believe for some reason it couldn't have been a material factor in defendant's guilt and so he couldn't have been prejudiced from it. And it's worth noting, again, the defendant made this argument to the jury. He argued that as I told you, there's no way of knowing where the bullet hole came from. Counsel called this the wild, wild west. There are bullet holes all over that part of town. He told you himself he couldn't tell you where the bullet hole came from. So disregard, disregardment. They didn't bring the CSI guy to match the bullet hole with the gun. Disregard. So the jury heard that same exact argument, which is similar to the argument the defendant presents to you today, arguing that we didn't have forensic evidence.  And I do just want to say about the closing argument, again, the first issue regarding the comment the defendant was left-handed, it's my understanding that that was based on a statement that was made with the gunshot residue kit, which was admitted into evidence. But as the trial court sustained the objection and observed, and I think that was what we just agreed to, was that there was no testimony about that. But the court did nevertheless tell the jury to disregard that comment. And what's important is not only did the judge tell the jury to disregard that comment and curative instructions were provided, but the prosecutor moved on and argued a different issue right after that. It didn't come back to any alleged statements that the defendant made about his left-handedness. And so this issue doesn't show that there was any sort of deliberate misconduct, which would warn a new trial. Similarly, regarding the comment about consistent gunshot residue on his left hand, this is a case where, in closing argument, the defendant said there was no evidence of gunshot residue. And I'm not asking to invert the invited error doctrine, but in response to that comment, the people said, and they were very clear that they weren't asking the jury to find that there was any positive finding, because there wasn't in this case, but they were asking the jury to note that there was the presence of two tripartite particles on the defendant's left hand. And that's something that the jury should have considered. Again, the people were very clear not to overstate the scientific evidence in this case and to be very frank about the fact that there wasn't a finding there. So, again, this doesn't show deliberate misconduct. The people were simply arguing what the evidence showed. And for those reasons, the defendant didn't have an unfair trial with respect to the third issue. And finally, just with respect to this court's question, we do agree with the defendant that because there were separate charges in the indictment for each of the officers in separate verdict forms, it was appropriate in this case where there were two victims to find the defendant guilty of two charges of aggravated discharge towards a peace officer. And if there are no further questions, the people of the State of Illinois would respectfully ask this court to affirm the defendant's convictions for those reasons and the reasons in our brief. Thank you. Thank you, counsel. I just want to touch on three points. The first is the opposing counsel's assertion, correct assertion, that Officer Ball initially testified that he heard one shot followed by three shots. I'll note that that equals four shots, which exactly matches the number of shots that Iza fired. I'll also note that Officer Ball was specifically asked about the timing of the shots and whether there are any breaks between the shots, presumably to indicate whether he heard something more like hindering an exchange of gunfire. And he testified he heard the shots fired in sequence, immediately after another, all within the course of two seconds. As far as the standard of review, under any standard, Your Honors, for the second issue, I think that the admission of this bullet hole evidence wasn't proper. Counsel indicated that the jury complied to common sense with regard to the bullet hole evidence. The problem is that the jury shouldn't have considered it at all, Your Honors. The issue is whether this evidence is admissible. And it's not relevant for the reasons I've described, because it's not connected to this case. This is connected to this case only by the testimony of an officer who admits he has no basis for his conclusion. Well, you have two officers testifying, three officers testifying to the gunfire. Correct. Two of them saying it's coming from the defender. Do you really think the dent in the garage was the important factor in this decision? I think, Your Honor, that the question is not really whether this was the most important factor. The question is whether the staking carried its burden of proving that there's a reasonable probability that the outcome of this case wouldn't be different. And because this is the only evidence corroborating ISA, this is the only evidence that purports to corroborate ISA, I should say, because it doesn't actually corroborate because it's not connected to this case. Bala's testimony contradicts ISA because he heard four shots. DeBose's testimony contradicts ISA because when he turned and saw my client, he couldn't have been in a position where he was firing a gun. There's a lack of physical evidence or cartridge casings showing my client fired a shot. You don't need casings to prove that. No, Your Honor. I think in the context of this case where all the shots were fired, you know, within two seconds, within ten feet of each other, and we found all the casings from the officer's gun. You know, if my client didn't fire a gun, there wouldn't be a casing. But he basically admitted he had a gun that day because of the prior issue. There's no question that my client had a gun. And then they found a gun at the scene. Correct. The question is not whether my client had a gun, Your Honor. The question is whether he fired a gun. The fact that he possessed it shows that he fired it, especially in light of this other evidence. No, no. When you say there's no other evidence, there certainly is that. Fair enough, Your Honor. And finally, Your Honor, with respect to the closing argument issue, counsel said that, you know, after the judge told the jury to disregard counsel, the prosecutor, you know, moved on and talked about other things. The prosecutor repeatedly referred to the left hand. He didn't go, he didn't repeat the fact that he had claimed that my client made the submission. But he repeatedly referred to the left hand with respect to the gunshot residue and with respect to the officer's testimony. It's the idea that the jury is supposed to sort of, you know, lock that one fact in a box that goes directly to the central issue in this case. But wait, that's why that fact was important to him, because the officers were stuck with their testimony that what they saw was him fire it with his left hand. Right? I mean, it's the left hand. That's the whole reason that it matters. Right? And that's the reason why that sentence is so prejudicial, because the prosecutor made an assertion that wasn't based on the testimony in this case on that critical fact. Okay. Your Honor, I have no further questions. One minute. Sure. All right. Thank you, Your Honor. With respect to the request of this Court, I would reverse my client's conviction or reverse no man for a new fair trial. Thank you. Thank you. Thank you both. Very vigorous and excellent representation on both sides, and we will get you an opinion shortly. Thank you.